# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

VANESSA S. COLEMAN,                           :
                                              :
        Plaintiff,                    :
                                              :
        v.                            :        Civil Action No. 04-1325 (GK)
                                              :
DISTRICT OF COLUMBIA,                         :
                                              :
        Defendant.                    :

## MEMORANDUM OPINION

Plaintiff, Vanessa S. Coleman, brings this employment discrimination suit against the District of Columbia alleging discrimination and retaliation based on her sex[1] in violation of Title VII, 42 U.S.C. §§ 2000e, et seq. ("Title VII").

This matter is now before the Court on Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment, [#28].[2]  Upon consideration of the Motion and Opposition[3] and the entire record herein, and for the reasons stated below, Defendant's Motion is **granted in part** and **denied in part**.

---

[1]   Plaintiff asserts race discrimination once in her Amended Complaint, but does not mention it at any other point therein or in her Opposition to Defendant's Motion.  To the extent Plaintiff meant to assert a race claim in this lawsuit, it must be dismissed.  Plaintiff did not allege race discrimination at the administrative level, see Attachment to Am. Compl., and fails to put forth a single fact to support such a claim.

[2]   Because in this case the Court must "consider matters outside the pleadings," Fed. R. Civ. P. 12(b), Defendant's Motion must be treated as one for summary judgment.

[3]   Defendant did not file a Reply to Plaintiff's Opposition.

I.    **BACKGROUND**[4]

Plaintiff was hired by the District of Columbia Fire and Emergency Medical Services ("Fire Department") in March 1990 as a probationary Cadet.  In October 1991, she was reclassified as a permanent Firefighter.  Am. Compl. ¶ 5.

In her disparate treatment claim, Plaintiff challenges the Fire Department's issuance to her of a "disciplinary write-up," otherwise known as a Form 169 ("F-169"), on July 5, 2003.  The F-169 was issued after Plaintiff lost an Automatic External Defibrillator ("AED"), a piece of lifesaving equipment used by the Fire Department, while she was acting as the sergeant-in-charge.[5]  Am. Compl. ¶ 11(a).

On July 18, 2003, Plaintiff filed an internal Equal Employment Opportunity ("EEO") complaint, challenging the Fire Department's issuance of the F-169, because such discipline was not taken against the male firefighters who were on duty with her when the AED was lost.  See Am. Compl. ¶ 11(a), (b).    Subsequently, the Fire Department issued F-169's to some of those male firefighters.  Pl.'s Resp. Mot. Dismiss ("Pl.'s Opp'n") at 9.

Plaintiff alleges she was retaliated against after filing her EEO complaint.  The facts of her retaliation claim are extremely unclear.[6]

---

[4]    Summary judgment may be granted only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c). Consequently, unless otherwise noted, the Court states only uncontroverted facts.

[5]    According to Defendant, a F-169 is only "a warning of possible discipline and . . . is not considered a disciplinary action.  The statement is maintained [in the employee's file] for three years [and then removed]."  Def.'s Mot at 1.

[6]    Throughout this litigation, Plaintiff's pleadings and papers have been poorly drafted and, in some cases, totally incomprehensible.  Several of Plaintiff's claims have already been
(continued...)

First, Plaintiff claims she was "denied training on two occasions." Am. Compl. ¶ 11(c). The Fire Department issued Plaintiff two "official reprimands" for missing these training courses. See Pl.'s Opp'n, Attach. 14, 15. "An Official Reprimand is a device to inform [an employee] that [his or her] conduct is not what is expected of [the employee] as an Officer and that future violations will result in more severe disciplinary action." Id.

Plaintiff challenged the issuance of the official reprimands through the Fire Department's Trial Board process. Def.'s Mot. at 2. After a hearing at which Plaintiff was represented by counsel, the Trial Board upheld the Fire Department's discipline of Plaintiff on both occasions. Id.; see Notice of Termination of Trial Board Proceedings Involving Discipline of Pl., filed Dec. 8, 2004, Docket Entry #14.

Second, Plaintiff further alleges that in August and September of 2003, the Fire Department issued her two additional "disciplinary write-ups" based upon "false accusations."[7] Am. Compl. ¶ 11(d). Plaintiff never specifies what those "false accusations" were.

On March 3, 2004, the EEOC issued Plaintiff a right to sue letter. Plaintiff filed this suit in the Superior Court of the District of Columbia and, on August 5, 2004, it was removed to this Court.

Plaintiff's original Complaint named the District of Columbia and the Fire Department as

_____

[6](...continued)
dismissed from this case because of the failure of Plaintiff's counsel to respond to a previously filed dispositive motion. See Oct. 31, 2005 Order. From that time on, the Court has had great difficulty figuring out what Plaintiff is actually challenging because her counsel's papers are so confusing and badly written. Plaintiff's counsel has failed to adequately set forth the facts of the case and to directly and clearly oppose Defendant's arguments.

[7]       The circumstances surrounding the "false accusations" are unclear. Plaintiff briefly mentions this claim in her Amended Complaint and Opposition, but fails to provide any detail whatsoever regarding those incidents.

Defendants.  On March 22, 2005, Defendants filed their first Motion for Judgment on the Pleadings or, in the alternative, for Partial Summary Judgment.  No Opposition was filed by Plaintiff's counsel and the Motion was granted as unopposed on October 31, 2005.

On January 3, 2006, pursuant to this Court's order, Plaintiff filed an Amended Complaint against the District of Columbia.  Defendant filed the instant Motion in lieu of an Answer.

## II.    STANDARD OF REVIEW

Summary judgment should be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits or declarations, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56. Material facts are those that "might affect the outcome of the suit under the governing law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact.   Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).   The nonmoving party then must "go beyond the pleadings and by [its] own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  Id. at 324 (internal quotations omitted).  See Laningham v. U.S. Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987) (nonmoving party has affirmative duty "to provide evidence that would permit a reasonable jury to find" in its favor); Crenshaw v. Georgetown Univ., 23 F.Supp.2d 11, 15 (D.D.C. 1998) (noting that "adverse party must do more than simply 'show that there is some metaphysical doubt as to the material facts'" (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)).

In deciding a motion for summary judgment, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). Ultimately, the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52.

## III.   ANALYSIS

Defendant moves for summary judgment on the grounds that Plaintiff fails to state a prima facie case of discrimination and retaliation. Def.'s Mot. at 1. Defendant claims that Plaintiff has not produced sufficient facts to show an adverse employment action was taken against her,[8] that her claims fail to "give rise to an inference of discrimination," and that she cannot establish a "causal connection" to prove that the Fire Department disciplined her as a result of her EEO activity. See id. at 7–8.

### A.   Defendant's Motion Is Granted with Respect to Plaintiff's Disparate Treatment Claim

#### 1.   The Governing Standard for Title VII Disparate Treatment Claims

Title VII provides, in relevant part, that it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). "In the absence of direct evidence of discrimination, disparate-treatment claims under Title VII are analyzed under the burden-shifting framework set forth in McDonnell

---

[8]      As the Court explains below, an adverse employment action is no longer a required element for a Title VII retaliation claim.

Douglas Corp. v. Green, 411 U.S. 792 (1973)."  Teneyck v. Omni Shoreham Hotel, 365 F.3d 1139,

1149 (D.C. Cir. 2004).  Under this framework, the plaintiff must first establish, by a preponderance

of the evidence, a prima facie case of discrimination.  See McDonnell Douglas, 411 U.S. at 802.

       To establish a prima facie case of discrimination, the plaintiff must show that (1) she is a

member of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable

action gives rise to an inference of discrimination.  Brown v. Brody, 199 F.3d 446, 455 (D.C. Cir.

1999).  This standard is not rigid, and may be altered to fit the facts of a particular case.  McDonnell

Douglas, 411 U.S. at 802 n.13.

       If the plaintiff establishes a prima facie case, then the burden shifts to the defendant to

"produce admissible evidence that, if believed, would establish that the employer's action was

motivated by a legitimate, nondiscriminatory reason."  Teneyck, 365 F.3d at 1151 (internal citation

omitted).  See McDonnell Douglas, 411 U.S. at 802; Aka v. Washington Hosp. Ctr., 156 F.3d 1284,

1288 (D.C. Cir. 1998).  "The employer's burden is one of production, not persuasion."  Teneyck, 365

F.3d at 1151 (internal citation omitted).

       If the employer satisfies this burden, "the McDonnell Douglas framework -- with its

presumptions and burdens -- disappear[s], and the sole remaining issue [i]s discrimination vel non."

Id. (internal citation omitted).  At this point, "a court reviewing summary judgment looks to whether

a reasonable jury could infer intentional discrimination . . . from all the evidence, including '(1) the

plaintiff's prima facie case; (2) any evidence the plaintiff presents to attack the employer's proffered

explanation for its action; and (3) any further evidence of discrimination that may be available to the

plaintiff (such as independent evidence of discriminatory statements or attitudes on the part of the

employer).'"  Carter v. George Washington Univ., 387 F.3d 872, 878 (D.C. Cir. 2004) (quoting

Waterhouse v. Dist. of Columbia, 298 F.3d 989, 992-93 (D.C. Cir. 2002)).

> **2.      Plaintiff Fails to State a Prima Facie Case of Disparate Treatment
> Because Issuance of an F-169 Does Not Constitute a Legally Cognizable
> Adverse Employment Action**

"An 'adverse employment action' within the meaning of McDonnell Douglas is 'a significant

change in employment status, such as hiring, firing, failing to promote, reassignment with

significantly different responsibilities, or a decision causing significant change in benefits.'"  Taylor

v. Small, 350 F.3d 1286, 1293 (D.C. Cir. 2003) (quoting Burlington Indus., Inc. v. Ellerth, 524 U.S.

742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998)).  To establish an adverse employment action,

therefore, an employee must show that he or she experienced a "tangible change in the duties or

working conditions constituting a material employment disadvantage."  Stewart v. Evans, 275 F.3d

1126, 1134 (D.C. Cir. 2002) (citing Walker v. WMATA, 102 F. Supp. 2d 24, 29 (D.D.C. 2000)).

This Circuit has consistently held that official reprimands and other disciplinary actions that

have no effect on an employee's grade or salary level do not constitute adverse employment actions.

See, e.g., Brown, 199 F.3d at 458 (a "thick body of precedent . . . refutes the notion that formal

criticism or poor performance evaluations are necessarily adverse actions"); accord Stewart, 275 F.3d

at 1136; Runkle v. Gonzales, 391 F. Supp. 2d 210, 225-26 (D.D.C. 2005).  Moreover, an employee

does not suffer an adverse employment action if he or she is faced with the possibility of a formal

disciplinary action in the future, or if the employee's performance is merely monitored by the

employer.  See Nurriddin v. Goldin, 382 F. Supp. 2d 79, 94 (D.D.C. 2005) (allegation that a letter

of reprimand may affect future promotions too speculative to constitute adverse employment action);

Runkle, 391 F. Supp. 2d at 226.

-7-

Here, Plaintiff attempts to distinguish her case from those cited above by arguing that "the counseling letter [F-169] is far more grievance [sic] that [sic] a mere letter of admonishment." Pl.'s Opp'n at 8. According to Plaintiff, the Fire Department is a "para-military organization [that] adheres to a progressive disciplinary process," and "[a] form 169 remains in the employees [sic] personnel file for three years and as a result of the form 169 further violations could result in more stringent disciplinary actions." Id. Plaintiff concludes, therefore, that the issuance of the F-169 after she lost the AED could have a deleterious effect on her future employment.[9]

Plaintiff's argument, however, is contrary to the substantial precedent of this Circuit holding that official reprimands and other types of formal admonishments do not constitute adverse employment actions. See, e.g., Brown, 199 F.3d at 458. Plaintiff has failed to put forth any facts to show that the Fire Department's formal reprimands affected the "terms, conditions, or privileges of her employment." Id. at 457. As stated above, mere speculation that a letter of reprimand may lead to future punishment is insufficient to establish an adverse employment action. See Nurriddin, 382 F. Supp. 2d at 94; Runkle, 391 F. Supp. 2d at 226.

Accordingly, the Court finds that because the Department's discipline of Plaintiff by issuing an F-169 does not constitute an adverse employment action, Plaintiff has failed to establish a prima

---

[9]     Plaintiff's cite to the "Fire Department's Order Book," Pl.'s Opp'n at 8, does not lend significant support to her argument. The Order Book informs Fire Department employees who receive a F-169 or other admonition that, "you are not meeting all the required standards of your position. Failure on our [sic] part to bring this aspect of your performance up to a satisfactory level may result in more severe action being taken against you." Id. (emphasis added). The fact that a F-169 may lead to further action against an employee is not evidence that an employee has actually suffered "materially adverse consequences affecting the terms, conditions, or privileges of [his or her] employment or [his or her] future employment opportunities." Brown, 199 F.3d at 457.

facie case of disparate treatment.   Therefore, Defendant's Motion is **granted** with respect to

Plaintiff's disparate treatment claim.

> **B.     Defendant's Motion Is Granted in Part and Denied in Part with Respect to Plaintiff's Retaliation Claim**

> **1.     The Governing Standard for Title VII Retaliation Claims**

With respect to Plaintiff's retaliation claim, Title VII provides:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a).

To state a prima facie case of retaliation, a plaintiff  must show that: (1) she engaged in

protected EEO activity; (2) that a reasonable employee would have found the challenged action so

materially adverse that she would have been dissuaded from engaging in the protected EEO activity,

and (3) that there was a causal connection between the protected activity and the challenged

retaliatory act.   See Rochon v. Gonzalez, 438 F.3d 1211, 1219-20 (D.C. Cir. 2006).

The Supreme Court recently clarified the second prong of the prima facie case for retaliation

in Burlington N. & Santa Fe R.R. Co. v. White, 126 S.Ct. 2405 (U.S. 2006).[10]  The Court explained

that Title VII's retaliation and discrimination provisions are not "coterminous," id. at 2414, and that

the anti-retaliation provision of Title VII is "not limited to discriminatory actions that affect the

---

[10]     The parties' briefs for this Motion were filed prior to issuance of this decision. Therefore, the legal standards the parties cited in their briefs are no longer applicable, and the Court applies the facts as stated in the parties' papers to the law as most recently set forth by the Supreme Court.

terms and conditions of employment," id. at 2412-13; see also Rochon v. Gonzales, 438 F.3d at 1219.  In other words, to make a prima facie case of retaliation, a plaintiff need not show that he or she was subjected to an "adverse employment action."

Rather, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  Burlington, 126 S.Ct. at 2409 (adopting standard as articulated by the D.C. and 7th Circuits) (internal citations omitted).

A court must be careful to "separate significant from trivial harms."  Burlington, 126 S.Ct. at 2415.  Merely because an employee has engaged in statutorily protected action does not mean that the employee is "immunize[d] . . . from those petty slights or minor annoyances that often take place at work and that all employees experience."  Rochon, 438 F.3d at 1219 (internal quotation marks omitted).  Instead, the harm suffered by the plaintiff must be "material or significant."  Id.

Moreover, and particularly relevant to this case, "context matters . . . [and] 'an act that would be immaterial in some situations is material in others.'"  Burlington, 126 S.Ct. at 2415-16 (quoting Washington v. Ill. Dep't of Rev., 420 F.3d 658, 661 (7th Cir. 2005)).

## 2.   **McDonnell Douglas** Analysis

Under the McDonnell Douglas framework, the Plaintiff must first establish a prima facie case of retaliation.  Plaintiff has clearly met the first prong of the prima facie case, as it is undisputed that she engaged in statutorily protected activity when she filed an EEO complaint in July 2003.

Plaintiff also meets the second prong under Burlington and Rochon.  In this case, Plaintiff alleges Defendant retaliated against her by:  (1) denying her access to two training classes, and (2) issuing disciplinary write-ups for "false accusations."  See Am. Compl. ¶ 17.

Plaintiff alleges that as a female, she had to "work[] hard to . . . move[] up the ranks within a Department that had been dominated by men."  Am. Compl. ¶ 6.  She further asserts that after filing her EEO complaint, she was subjected to a "flurry" of disciplinary activity.  Pl.'s Opp'n at 10.

As the Supreme Court explained, "context matters," in determining whether a Plaintiff has established by a preponderance of the evidence that a reasonable worker would be discouraged from taking further protected EEO activity based on the challenged retaliatory actions.  A female firefighter, working in a male-dominated environment, might well be discouraged from filing an EEO complaint if, after working hard to move up within the ranks, she was denied training classes and subjected to unwarranted discipline after filing a charge of discrimination.  Such a result cannot be considered "trivial" in the context of Plaintiff's work environment.  See Burlington,126 S.Ct. at 2415-16 ("to retaliate by excluding an employee from a weekly training lunch that contributes significantly to the employee's professional advancement might well deter a reasonable employee from complaining about discrimination") (emphasis added).

Therefore, the Court concludes that Plaintiff has alleged sufficient facts to show that a "reasonable employee would have found the action[s] materially adverse," and "might have [been] 'dissuaded . . . from making or supporting a charge of discrimination.'"  Burlington, 126 S.Ct. at 2415 (quoting Rochon, 438 F.3d at 1219).

Finally, Plaintiff has established a causal connection between her protected activity and the challenged acts, thus satisfying the third prong of her prima facie case.

Defendant claims that "[t]o establish a causal connection, Plaintiff must show that retaliation was the but for cause of the alleged retaliatory action."  Def.'s Mot. at 8.  This is a misstatement of the law.  As the D.C. Circuit stated in Rochon, it has "long held that a 'causal connection . . . may

be established by showing that the employer had knowledge of the employee's protected activity, and that the adverse . . . action took place shortly after that activity.'"  438 F.3d at 1220 (citing Mitchell v. Baldrige, 759 F.2d 80, 86 (D.C. Cir. 1985)).

Here, Plaintiff alleges that "almost immediately following the Plaintiff's complaint, the department issued a flurry of disciplinary actions against the Plaintiff."  Pl.'s Opp'n at 10.  The disciplinary write-ups for "false accusations" were made in August and September of 2003, just one and two months after Plaintiff filed her EEO complaint.  Plaintiff further alleges that she was denied training on two occasions "soon after" filing her EEO complaint. Am. Compl. ¶ 11(c).  Accordingly, Plaintiff alleges facts sufficient to establish the causation element for her prima facie case of retaliation.

Under the McDonnell Douglas framework, the burden of production then shifts back to the Defendant to produce a "legitimate, non-discriminatory" explanation for the actions taken against Plaintiff.  Teneyck, 365 F.3d at 1151 (internal citation omitted).

Defendant did not produce any non-discriminatory legitimate reason for its issuance of "disciplinary write ups based on false accusations."[11]  Accordingly, it has not met its burden of production under McDonnell Douglas with respect to Plaintiff's retaliation claim for disciplinary write ups based on false accusations and its Motion must be **denied** with respect to that claim. See Am. Compl. ¶ 17(b).

---

[11]     Although Plaintiff does not provide any detail with respect to these claims, the Court was able to discern, by sifting through the pile of exhibits Plaintiff attached to its Opposition, that these disciplinary write ups were not the same ones that the Trial Board addressed in its proceedings, as the disciplinary write ups did not relate to Plaintiff's failure to attend training classes.

Defendant did argue that "at a minimum, the findings of the trial board – after on-the-record hearings with witnesses subject to cross-examination – establish a legitimate non-discriminatory reason for issuance of the discipline." Def.'s Mot. at 8. As noted above, the Trial Board proceedings were initiated after Plaintiff received "official reprimands" for failure to attend two mandatory training classes. Although neither Plaintiff's Amended Complaint nor her Opposition provides any further detail about these training classes, it appears that these are the same training classes Plaintiff claims she was "denied" in her Amended Complaint. In her Opposition to the Motion, Plaintiff failed to respond to Defendant's argument and clarify the facts in any way.

The Trial Board's findings show that Plaintiff's discipline was the result of her own failure to abide by the written rules governing the terms of her employment. <u>See</u> Notice of Termination of Trial Board Proceedings Involving Discipline of Pl., filed Dec. 8, 2004, Docket Entry #14 ("If Sergeant Coleman had simply read <u>all</u> memos and orders . . . as she is required to by Article III, Section 9 of the Fire and EMS Department Order Book, she could have attended the mandated [Incident Command System] training." . . . "Article III Section 24 of the Order Book . . . states in part, 'It is the responsibility of the individual member to ensure that a valid EMT/paramedic/CPR card is maintained.'"). By putting forth this explanation – namely that Plaintiff was disciplined for failure to follow the written rules of her job – Defendant has satisfied its burden of production of offering a legitimate, non-discriminatory reason for its actions.

At this point, "the <u>McDonnell Douglas</u> framework -- with its presumptions and burdens -- disappear[s], and the sole remaining issue [i]s discrimination <u>vel non</u>." <u>Teneyck</u>, 365 F.3d at 1151 (internal citation omitted). Thus, the Court looks to whether a reasonable jury could infer that Defendant "denied" Plaintiff training in retaliation for her engaging in protected EEO activity. The

Court now considers "all the evidence, including '(1) the plaintiff's <u>prima facie</u> case; (2) any evidence the plaintiff presents to attack the employer's proffered explanation for its action; and (3) any further evidence of discrimination that may be available to the plaintiff (such as independent evidence of discriminatory statements or attitudes on the part of the employer).'" <u>Carter</u>, 387 F.3d at 878 (internal citation and quotation omitted).

Other than the evidence discussed above with respect to the <u>prima facie</u> case, Plaintiff puts forth no further evidence to support her retaliation claim. Plaintiff makes no attempt whatsoever to rebut Defendant's proffered non-discriminatory reason. The Court concludes that because the disciplinary actions were based upon a written rule that was applicable to all employees, a reasonable jury could not find that they were taken against Plaintiff because of her sex. Accordingly, Defendant's Motion is **granted** with respect to Plaintiff's retaliation claim based on denial of training courses.

## IV.   CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is **granted** with respect to Plaintiff's disparate treatment claim and Plaintiff's retaliation claim based on a denial of training classes. Defendant's Motion is **denied** with respect to Plaintiff's retaliation claim based on the disciplinary write-ups issued in August and September 2003.

An Order will issue with this Memorandum Opinion.


                                                    /s/
August 22, 2006                                     GLADYS KESSLER
                                                    United States District Judge

**Copies to:  attorneys on record via ECF**

-14-